UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

JONATHAN HELLER, Ph.D.,

          Plaintiff,

v.

CHIRINJEEV KATHURIA, ELIZABETH NG,
OCEAN BIOMEDICAL, INC. and
POSEIDON BIO, LLC,

          Defendants.

Case No. 1:23cv212
Hon. Mary S. McElroy

## DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES

NOW COME Defendants Chirinjeev Kathuria, Elizabeth Ng, Ocean Biomedical, Inc. and Poseidon Bio, LLC (collectively "Defendants"), by and through the undersigned counsel, and for their Answer and Affirmative Defenses to Plaintiff's Complaint state as follows:

### SUMMARY OF THE ACTION

1.    Plaintiff Jonathan Heller, Ph.D., brings this action against Defendants Chirinjeev Kathuria, Elizabeth Ng, Ocean Biomedical, Inc. ("Ocean" or the "Company") and Poseidon Bio, LLC (collectively, "Defendants") to recover, among other things, unpaid wages earned during his employment with Defendant Ocean. Dr. Heller also seeks damages for Ocean's unlawful retaliation against him following his complaints about his unpaid wages and his working conditions. Dr. Heller further seeks damages based on Ocean's breach of its contractual obligations to him.

**ANSWER:**    Defendants deny the allegations contained in Paragraph 1 of the Complaint.

2.      More specifically, Defendants failed to pay Dr. Heller any wages whatsoever during and upon termination of his employment with Ocean in violation of the Massachusetts Wage Act, M.G.L. c. 149, § 148 et seq. (the "Wage Act"). Ocean further violated the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. (the "FLSA") and the Massachusetts Minimum Wage Act by failing to pay Dr. Heller minimum wage during the course of his employment with the Company. Moreover, after Dr. Heller complained about his unpaid wages, Ocean retaliated against him, excluding him from investor meeting and stripping him of duties associated with his role as Chief Scientific Officer and Head of R&D. Following Dr. Heller's resignation from the Company for "Good Reason," Ocean failed to pay Dr. Heller the contractual severance benefits owed to him, including twelve (12) months of salary continuation, the payment of a variety of bonuses, and full acceleration of vesting of all of his equity awards in Defendant Poseidon.

**ANSWER:**      Defendants deny the allegations contained in Paragraph 2 of the Complaint.

3.      Ocean, with the direct assistance of Defendants Kathuria and Ng, engaged in a long-running scheme to string Dr. Heller along with (false) promises that he would be fully compensated upon the Company's initial public offering ("IPO"). Even following the occurrence of the IPO, however, Defendants have ignored Dr. Heller's request for the outstanding payments and have refused to make good on their promises.

**ANSWER:**      Defendants deny the allegations contained in Paragraph 3 of the Complaint.

4.      Accordingly, Dr. Heller brings this complaint against Defendants, seeking damages and other appropriate relief in connection with the following claims: (1) failure to pay wages in violation of the Wage Act, M.G.L. c. 149, § 148; (2) retaliation in violation of both the Massachusetts Wage Act, M.G.L. c. 149, § 148A and Fair Labor Standards Act, 29 U.S.C. § 215; (3) failure to pay the minimum wage in violation of both the Fair Labor Standards Act 29 U.S.C.

§ 206 and the Massachusetts Minimum Wage Act M.G.L. c. 151, § 1; (4) breach of contract; (5) breach of implied covenant of good faith and fair dealing; and (6) quantum meruit.

**ANSWER:**    Defendants deny the allegations contained in Paragraph 4 of the Complaint.

## PARTIES

5.    Plaintiff Jonathan Heller (hereinafter "Dr. Heller") is an individual who resides at 445 Pleasant Street in Belmont, Massachusetts. In his role as Chief Scientific Officer and Head of R&D at Ocean, Dr. Heller was an "employee" of the Company within the meaning of the FLSA and Wage Act.

**ANSWER:**    Defendants admit Plaintiff resides in Massachusetts. Defendants lack information or knowledge sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 5 of the Complaint and therefore deny the allegations in Paragraph 5 and put Plaintiff to his strictest proof thereon.

6.    Defendant Chirinjeev Kathuria (hereinafter, "Defendant Kathuria") is an individual who, on information and belief, resides in Illinois and he is and was at all relevant times the Founder and Executive Chairman of the Board of Ocean.

**ANSWER:**    Defendants admit the allegations contained in Paragraph 6 of the Complaint.

7.    Defendant Elizabeth Ng (hereinafter, "Defendant Ng") is an individual who, on information and belief, resides in California and she is and was at all relevant times the Chief Executive Officer of Ocean.

**ANSWER:**    Defendants admit the allegations contained in Paragraph 7 of the Complaint.

8.    Defendant Ocean is a Delaware corporation with a principal place of business at 55 Clarevick St., Suite 325, Providence, Rhode Island. Ocean was Dr. Heller's "employer," within the meaning of FLSA and Wage Act.

**ANSWER:**    Defendants admit Ocean is a Delaware corporation with its principal place of business in Rhode Island. Defendants lack information or knowledge sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 8 of the Complaint and therefore deny the allegations in Paragraph 8 and put Plaintiff to his strictest proof thereon.

9.      Defendant Poseidon Bio, LLC ("Poseidon") is a Delaware limited liability company, with a principle [sic] place of business at 55 Clarevick St., Suite 325, Providence, Rhode Island.

**ANSWER:**    Defendants admit the allegations contained in Paragraph 9 of the Complaint.

<h3 align="center">JURISDICTION AND VENUE</h3>

10.      Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties, and because the amount in controversy exceeds $75,000. Jurisdiction is also proper is this Court pursuant to 28 U.S.C. § 1331, as Plaintiff has brought a claim pursuant to the FLSA.

**ANSWER:**    Defendants admit that jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332. Defendants lack information or knowledge sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 10 of the Complaint and therefore deny the allegations in Paragraph 10 and put Plaintiff to his strictest proof thereon.

11.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because: (i) Ocean's principal place of business in this judicial district, and (ii) Dr. Heller and Ocean agreed to this venue as the exclusive forum for disputes in connection with Dr. Heller's employment.

**ANSWER:**    Defendants admit the allegations contained in Paragraph 11 of the Complaint.

<h3 align="center">FACTS</h3>

12.      Ocean is a biotechnology company focused on developing innovative therapeutics through research and clinical trials for the treatment of diseases with high unmet need, including

preclinical development of potential therapies and vaccines for malaria and potential oncology therapeutic antibodies.

**ANSWER:**    Defendants admit the allegations contained in Paragraph 12 of the Complaint.

13.    During the time of Dr. Heller's employment, Ocean had an early preclinical pipeline consisting of neurofibromatosis assets licensed from Teton Therapeautics [sic], Inc., a company Dr. Heller founded.

**ANSWER:**    Defendants admit that a license agreement between Ocean Biomedical, Inc. and Teton Therapeutics, Inc. was entered into on or about February 25, 2021. Defendants deny the remaining allegations contained in Paragraph 13 of the Complaint.

### The Original Employment Agreement

14.    On or about November 27, 2018, Dr. Heller discussed an employment opportunity with Defendant Ng, a former colleague, about the formation of Ocean and the technology that the Company sought to license from Brown University. Defendant Ng explained that the Company needed a Chief Scientific Officer and a Head of R&D, and asked Dr. Heller to join Ocean in those roles.

**ANSWER:**    Defendants admit that Defendant Ng and Plaintiff are former colleagues. Defendants admit that in November 2018 Defendant Ng and Plaintiff discussed the formation of Ocean and the Brown University technology. Defendants affirmatively state that Defendant Ng and Plaintiff discussed Plaintiff serving as co-Chief Scientific Officer. Defendants deny the remaining allegations contained in Paragraph 14 of the Complaint.

15.    On February 1, 2019, Dr. Heller began working full-time and exclusively for Ocean as its Chief Scientific Officer ("CSO"). Because it was a start-up company and had yet to secure a license to the relevant technology, Dr. Heller was not provided with any formal employment agreement that documented the terms and conditions of his employment. Nor was he provided

with any compensation for his work. Rather, he was told by Ocean that he would receive an employment agreement at a later time, which would document the Company's agreement and obligation to pay him.

**ANSWER:**    Defendants admit that on or about February 1, 2019, Plaintiff began working for Ocean. Defendants deny the remaining allegations contained in Paragraph 15 of the Complaint. Defendants affirmatively state that Plaintiff was provided with a written employment agreement in early February 2019 and that said agreement was signed by Plaintiff on or about July 1, 2019 (the "Original Employment Agreement"). Defendants affirmatively state that Plaintiff did not work "exclusively" for Ocean as he also served, and continues to serve, as CEO of Teton Therapeutics during his employment with Ocean.

16.    As CSO, Dr. Heller was the top resource for scientific knowledge at the Company. In short, he was responsible for knowing and communicating, both internally and externally, the science underlying the Company's pipeline, whether it be what the therapeutics are and how they work to potential risks and benefits based on studies of potential side effects.

**ANSWER:**    Defendants deny the allegations contained in Paragraph 16 of the Complaint. Defendants affirmatively state that the actual inventors of the Company's assets and technology are the "top resources" for "scientific knowledge" on those matters. Defendants affirmatively state that Plaintiff was just one of the employees of the Company "responsible for knowing and communicating…the science underlying the Company's pipeline."

17.    Several months after starting with Ocean, in addition to the CSO role, Dr. Heller also assumed the title of Head of R&D at Ocean, as he had been performing the operational tasks of a Head of R&D.

**ANSWER:**     Defendants deny the allegations contained in Paragraph 17 of the Complaint. Defendants affirmatively state that Plaintiff performed some "operational tasks" related to R&D but others were performing "operational tasks" related to R&D as well. Defendants affirmatively state that Plaintiff's title changed to include "Head of R&D" under the terms of the Amended Employment Agreement dated February 22, 2021.

18.     As Head of R&D, Dr. Heller was responsible for planning and developing the Company's products from the drawing board, or acquisition, to reality through preclinical and clinical research, with the goal of obtaining approval by desired governmental regulatory bodies. In this role, Dr. Heller kept apprised of all aspects of the clinical development process, and remained responsible for communicating the Company's development objectives, strategy, and execution both internally and externally.

**ANSWER:**     Defendants deny the allegations contained in Paragraph 18 of the Complaint.

19.     In his roles, as CSO and Head of R&D, Dr. Heller reported to the Chief Executive Officer of Ocean, Defendant Ng.

**ANSWER:**     Defendants admit the allegations contained in Paragraph 19 of the Complaint.

20.     At all relevant times, Ocean had no office or laboratory space or a corporate headquarters. Rather, on information and belief, the mailing address used by the Company was the personal residence of Defendant Kathuria. As a result, beginning in February 2019 and throughout his employment, Dr. Heller performed his job duties primarily from his home in Belmont, Massachusetts. To Dr. Heller's knowledge, during the term of his employment, all employees of the Company primarily worked remotely.

**ANSWER:**     Defendants admit Plaintiff lives in Massachusetts. Defendants lack information or knowledge sufficient to form a belief as to the truth of the allegations regarding where Plaintiff

performed his job duties and therefore deny those allegations and put Plaintiff to his strictest proof thereon. Defendants deny the remaining allegations contained in Paragraph 20 of the Complaint.

21.     Although Dr. Heller was informed by Ocean through Defendants Kathuria and Ng that securing necessary licenses to the Brown University technology was "imminent" or only "2 weeks away," the licenses did not materialize for many months. When the Company ultimately secured licensing of the underlying technology, Ocean issued Dr. Heller a formal employment agreement on July 1, 2019, reflecting his initial role as the Company's CSO (hereinafter, the "Original Employment Agreement" attached hereto and incorporated herein as Exhibit 1). The Original Employment Agreement reflected Dr. Heller's start date of February 1, 2019.

**ANSWER:**     Defendants admit that, under the terms of the Original Employment Agreement, Plaintiff's title was Chief Scientific Officer and Plaintiff's start date was February 1, 2019. Defendants affirmatively state that the Original Employment Agreement was provided to Plaintiff in early February 2019 but was not signed by Plaintiff until July 1, 2019. Defendants deny the remaining allegations contained in Paragraph 21 of the Complaint.

22.     The Original Employment Agreement provided that Ocean would pay Dr. Heller an annual salary of $350,000. In violation of the Wage Act, however, the Original Employment Agreement reflected Ocean's plan to defer payment of Dr. Heller's earned salary. The Original Employment Agreement stated that Dr. Heller's salary would "be earned but [...] accrue until the closing of the Company's first capital raise (the "Salary Accrual Date")."

**ANSWER:**     The allegations of Paragraph 22 purport to characterize the contents of the Original Employment Agreement, to which Defendants respectfully refer the Court for a complete and accurate statement of its contents. Defendants affirmatively state that the terms of the Original Employment Agreement were superseded by the terms of the Amended Employment Agreement.

The remaining allegations of Paragraph 22 assert a legal conclusion to which Defendant need not provide a response. To the extent a response is required Defendants deny the remaining allegations contained in Paragraph 22 of the Complaint.

23.    Under the terms of the Original Employment Agreement, Dr. Heller was also entitled to a sign-on bonus of $30,000, earned as of his start date of February 1, 2019. Like his $350,000 annual salary and in violation of the Wage Act, the Original Employment Agreement provided that Ocean would not pay Dr. Heller this earned bonus until the "Salary Accrual Date," *i.e.*, the closing of the Company's first capital raise.

**ANSWER:**    The allegations of Paragraph 23 purport to characterize the contents of the Original Employment Agreement, to which Defendants respectfully refer the Court for a complete and accurate statement of its contents. Defendants affirmatively state that the terms of the Original Employment Agreement were superseded by the terms of the Amended Employment Agreement. The remaining allegations of Paragraph 23 assert a legal conclusion to which Defendant need not provide a response. To the extent a response is required Defendants deny the remaining allegations contained in Paragraph 23 of the Complaint.

24.    Dr. Heller was told by both Defendants Kathuria and Ng that his earned salary and bonus payments would be forthcoming, upon the first successful capital raise, but that Ocean first needed to retain talent to develop and grow the Company in order to attract investors.

**ANSWER:**    Defendants affirmatively state that the terms of Plaintiff's employment were outlined in the Original Employment Agreement, to which Defendants respectfully refer the Court for a complete and accurate statement of its contents. Defendants deny the remaining allegations contained in Paragraph 24 of the Complaint.

25.    By the terms of the Original Employment Agreement, Dr. Heller was entitled to four (4) weeks of paid vacation per year.

**ANSWER:**    The allegations of Paragraph 25 purport to characterize the contents of the Original Employment Agreement, to which Defendants respectfully refer the Court for a complete and accurate statement of its contents. Defendants affirmatively state that the terms of the Original Employment Agreement were superseded by the terms of the Amended Employment Agreement.

26.    By the terms of the Original Employment Agreement, Dr. Heller was eligible to participate in the Company's Annual Incentive Plan to earn a bonus of up to 100% of his $350,000 salary, with a target bonus of 65% of the salary.

**ANSWER:**    The allegations of Paragraph 26 purport to characterize the contents of the Original Employment Agreement, to which Defendants respectfully refer the Court for a complete and accurate statement of its contents. Defendants affirmatively state that the terms of the Original Employment Agreement were superseded by the terms of the Amended Employment Agreement.

27.    The Original Employment Agreement also made clear that "upon completion of an initial public offering of the equity securities of the Company or any of its affiliates, you will receive a cash bonus equal to 100% of your Base Salary to be paid immediately upon completion of the offering."

**ANSWER:**    The allegations of Paragraph 27 purport to characterize the contents of the Original Employment Agreement, to which Defendants respectfully refer the Court for a complete and accurate statement of its contents. Defendants affirmatively state that the terms of the Original Employment Agreement were superseded by the terms of the Amended Employment Agreement.

28.    The Original Employment Agreement also outlined extensive equity grants. Dr. Heller was to receive: (i) an initial grant stock equal to .50% of the Company's total fully-diluted

equity as of the date of signing; (ii) an additional grant following the Company's first capital raise, which, together with the Initial Grant, would equal .50% of the Company's total fully-diluted equity as of that date; and (iii) a final grant of stock to be granted immediately prior to the effective date of an initial public offering of the equity securities of the Company or any of its affiliates, together with the initial and additional grants equal to .50% of the Company's total fully-diluted equity as of the consummation of the initial public offering.

**ANSWER:**    The allegations of Paragraph 28 purport to characterize the contents of the Original Employment Agreement, to which Defendants respectfully refer the Court for a complete and accurate statement of its contents. Defendants affirmatively state that the terms of the Original Employment Agreement were superseded by the terms of the Amended Employment Agreement.

29.    On July 1, 2019, Dr. Heller accepted the terms of the Original Employment Agreement and continued to work for Ocean.

**ANSWER:**    Defendants admit the allegations contained in Paragraph 29 of the Complaint. Defendants affirmatively state that the terms of the Original Employment Agreement were superseded by the terms of the Amended Employment Agreement.

### Dr. Heller Continues to Work Without Compensation

30.    Throughout the months that followed, Dr. Heller continued to receive no compensation for any of the work he performed for Ocean.

**ANSWER:**    Defendants admit that Plaintiff worked for Ocean pursuant to the terms of the Original Employment Agreement.

31.    Upon information and belief, Dr. Heller, as CSO, was one of the few employees who was working full-time for Ocean and not getting paid to work. Dr. Heller understood that other Ocean employees worked on a part-time basis and supported themselves financially by maintaining paid employment elsewhere.

**ANSWER:**    Defendants deny the allegations contained in Paragraph 30 of the Complaint.

32.    Dr. Heller, as CSO and Head of R&D, was focused on the scientific and technical aspect of the Company and its developments. Defendant Ng, as Chief Executive Officer, was focused primarily on the Company's operations. Defendant Kathuria, as Founder and Executive Chairman of the Board, was focused on external relations and fundraising. Of the three, Dr. Heller was the only individual with technical knowledge of the licensed technology and with prior experience as a CSO in drug development.

**ANSWER:**    Defendants admit that Defendant Ng was CEO and responsible for, among other things, the Company's operations, including scientific and technical advancement of the Company's programs. Defendants admit that Defendant Kathuria was Founder and Executive Chairman of the Board and responsible for external relations and fundraising. Defendants deny the remaining allegations in Paragraph 32 and put Plaintiff to his strictest proof thereon.

33.    In his capacity as CSO, as time progressed, Dr. Heller became increasingly apprehensive about Ocean's public-facing representations to investors and other potential partners. In or around July 2020, Dr. Heller began to voice concerns to Defendant Kathuria regarding Ocean's representations to investors and potential partners. Dr. Heller's concern became more acute as Ocean began to exclude him from critical meetings, given his key knowledge of the process of Ocean's drug development and all it entails.

**ANSWER:**    Defendants deny the allegations contained in Paragraph 33 of the Complaint.

34.    For example, in 2020, Defendant Kathuria asked Dr. Heller to represent to investors that the Company had a program for developing therapies for COVID-19, given that it was a paramount concern and burgeoning area of research and development at the time and a key focus for investors.

**ANSWER:**    Defendants admit the allegations contained in Paragraph 34 of the Complaint.

35.    Dr. Heller disagreed with this representation, as Ocean did not have such program at the time. Rather, Ocean had only had preliminary meetings with potential partners to discuss this potential work. Over Dr. Heller's concerns, the Company nonetheless included information about a COVID-19 program in its materials.

**ANSWER:**    Defendants deny the allegations contained in Paragraph 35 of the Complaint.

36.    Apparently concerned with Dr. Heller's tendency to raise his views amongst internal and external stakeholders, Defendant Kathuria began to silo Dr. Heller. For example, Defendant Kathuria cancelled weekly Company meetings in August 2020 onward, preventing discussions between Dr. Heller and research partners at Brown University. This, in effect, was Defendant Kathuria taking away opportunities for Dr. Heller to correct any representations that he made to others.

**ANSWER:**    Defendants deny the allegations contained in Paragraph 36 of the Complaint.

37.    By early 2021, tension between Dr. Heller and Defendant Kathuria continued to grow. At this time, Dr. Heller and Ocean began discussions regarding an amendment to Dr. Heller's employment agreement.

**ANSWER:**    Defendants admit that discussions regarding amendments to various employment agreements, including Plaintiff's, took place in early 2021. Defendants deny the remaining allegations in Paragraph 37 of the Complaint.

### Dr. Heller and Ocean Enter into an Amended Employment Agreement

38.    By 2021, Dr. Heller had invested significant time and some of his own resources into building Ocean. He was still waiting for payment of his earned salary and bonus. He continued to trust Defendant Ng given his longstanding professional relationship with her prior to joining Ocean. Dr. Heller was aware at this time that Ocean had retained new legal counsel and they were

preparing new versions of employment agreements and corporate documents for Ocean and its employees.

**ANSWER:**    Defendants admit new versions of certain employment agreements and corporate documents were prepared for Ocean in early 2021. Defendants admit that Plaintiff and Defendant Ng have a long-standing professional relationship. Defendants deny the remaining allegations contained in Paragraph 38.

39.    On February 22, 2021, Dr. Heller and Ocean executed a second employment agreement (hereinafter "Amended Employment Agreement," attached hereto as Exhibit 2).

**ANSWER:**    Defendants admit the allegations contained in Paragraph 39 of the Complaint.

40.    Under the terms of the Amended Employment Agreement, Dr. Heller's "employment began on January 1, 2020" (defined as the "Start Date").

**ANSWER:**    The allegations contained in Paragraph 40 purport to characterize the contents of the Amended Employment Agreement, to which Defendants respectfully refer the Court for a complete and accurate statement of its contents.

41.    Under the terms of the Amended Employment Agreement, Dr. Heller's annual salary continued to be $350,000, "payable in accordance with the Company's standard payroll schedule."

**ANSWER:**    The allegations contained in Paragraph 41 purport to characterize the contents of the Amended Employment Agreement, to which Defendants respectfully refer the Court for a complete and accurate statement of its contents.

42.    The Amended Employment Agreement continued to (illegally) provide for deferred compensation similar to the terms of the Original Employment Agreement. Specifically, the Amended Employment Agreement, provided that "[p]ayment of any salary deferred since the Start

Date will be upon the successful completion of the IPO [...] subject to your continued employment with the Company through such payment date." Defendant Kathuria told Dr. Heller that this was necessary because the Company has accrued too much debt in unpaid wages, making third-party investment in the Company (and the Company's ability to pay Dr. Heller) less likely.

**ANSWER:**    The allegations contained in Paragraph 42 purport to characterize the contents of the Amended Employment Agreement, to which Defendants respectfully refer the Court for a complete and accurate statement of its contents. The remaining allegations of Paragraph 42 assert a legal conclusion to which Defendant need not provide a response. To the extent a response is required Defendants deny the remaining allegations contained in Paragraph 42 of the Complaint.

43.    Because he was told by Defendant Kathuria that Ocean was struggling to find investors due, in part, to their substantial accrued debts to Dr. Heller and other employees, Dr. Heller understood that the Company sought to understate monies owed to him. However, he continued to believe in the trajectory of the Company that Defendant Kathuria continued to paint, both within the Company and to outside investors. He was told that only the IPO -- which was dependent upon attracting more investors -- would generate sufficient revenue to pay employees (including Dr. Heller) what they were owed. And by this point, Dr. Heller had invested significant time and personal resources in Ocean's success. For example, in addition to having received no salary, Dr. Heller covered the cost of patent-related fees and expenses for which he never received reimbursement from Ocean. He also traveled on behalf of the Company to various locations without Company reimbursement.

**ANSWER:**    Defendants deny that Ocean was struggling to find investors. Defendants lack information or knowledge sufficient to form a belief as to the truth of the remaining allegations

contained in Paragraph 43 of the Complaint and therefore deny the remaining allegations in Paragraph 43 and put Plaintiff to his strictest proof thereon.

44.    Under the terms of the Amended Employment Agreement, in addition to his salary, Dr. Heller would also be eligible for a series of bonuses. Specifically, Dr. Heller would earn a "cash bonus equal to $380,000 (three hundred eighty thousand Dollars), which will be paid in a lump sum within thirty (30) days following the completion of the Company's first capital raise equal to at least fifty (50) million Dollars (the 'First Capital Raise' and such bonus the 'First Capital Raise Bonus')" and a "cash bonus equal to $350,000 (three hundred fifty thousand Dollars) (the 'IPO Bonus') to be paid in a lump sum immediately upon completion of the IPO, subject to your continued employment with the Company through such payment date."

**ANSWER:**    The allegations contained in Paragraph 44 purport to characterize the contents of the Amended Employment Agreement, to which Defendants respectfully refer the Court for a complete and accurate statement of its contents. Defendants affirmatively state that the quotation of the Amended Employment Agreement alleged in Paragraph 44 of the Complaint is inaccurate and misleading. The accurate and complete quotation is as follows: "In addition, upon completion of an **initial public offering** of the equity securities of the Company or any of its affiliates **prior to August 31, 2021** (the 'IPO'), you will receive a cash bonus equal to $350,000 (three hundred fifty thousand Dollars)(the 'IPO Bonus') to be paid in a lump sum immediately upon completion of the IPO, subject to your continued employment with the Company through such payment date." Amended Employment Agreement, ¶ 4 (emphasis added).

45.    The Amended Employment Agreement also contained the following severance provision:

    **5.    Severance.** Notwithstanding anything to the contrary, in the event your employment with the Company is terminated without Cause (as defined in the Company's 2021

Stock Option and Grant Plan (as amended from time to time, the "Plan") or you resign from the Company with Good Reason (as defined in the Plan), you will be entitled to receive the following severance benefits, subject to your execution and delivery of an irrevocable release of claims in favor of the Company and its affiliates within sixty (60) days of such termination: (a) continuation of your then-current base salary for twelve (12) months, payable in accordance with the Company's regular payroll cycle; (b) a pro-rata portion of your then-current Target Bonus, based on the number of days you were employed by the Company in the year of termination, payable in substantially equal installments in accordance with the Company's regular payroll cycle over twelve (12) months; (c) full and immediate accelerated vesting of any and all of your then-outstanding and unvested equity awards in the Company; (d) subject to the completion of the First Capital Raise, the First Capital Raise Bonus, payable in a lump sum within thirty (30) days of the completion of such First Capital Raise, regardless of your continued employment with the Company through the payment date; (e) subject to the completion of the IPO, the IPO Bonus, payable in a lump sum immediately upon completion of such IPO, regardless of your continued employment with the Company through the payment date; and (f) extended post-termination exercise periods for your then-outstanding options, to the extent vested and exercisable as of the date of such termination, for the remainder of their terms.

**ANSWER:**    The allegations contained in Paragraph 45 purport to characterize the contents of the Amended Employment Agreement, to which Defendants respectfully refer the Court for a complete and accurate statement of its contents. Defendants affirmatively state that Plaintiff failed to execute and deliver an irrevocable release of claims in favor of the Company and its affiliates within sixty (60) days of his resignation and therefore is not entitled to any severance pursuant to the terms of the Amended Employment Agreement.

46.    Contemporaneous with the signing of the Amended Employment Agreement, Dr. Heller was required to sign a confirmation of expenses in connection with an audit of Ocean's financial statements for fiscal years 2019 and 2020.

**ANSWER:**    Defendants admit that Plaintiff signed a confirmation of expenses in connection with an audit of Ocean's financial statements in February 2021. Defendants deny the remaining allegations contained in Paragraph 46 of the Complaint.

47.    This confirmation of expenses originally did not reflect Ocean's outstanding salary and bonus obligations to Dr. Heller. After Dr. Heller objected to this omission, the statement was

revised to acknowledge that the Company owed Dr. Heller outstanding salary and bonuses. The statement (attached as Exhibit 3 hereto, emphasis in original) read, in relevant part, that:

(a) The amount owed to you, excluding salaries and/or bonuses, as detailed below:

| Date | Amount |
|---|---|
| 12/31/2019 | $0 |
| 12/31/2020 | $0 |

**ANSWER:**    Defendants admit the allegations contained in Paragraph 47 of the Complaint.

48.    Dr. Heller was also required to sign a Grant of Profit Interest Agreement (hereinafter, the "Profit Interest Grant," attached hereto and incorporated herein as Exhibit 4), under which the Company (by its newly formed parent Company, Poseidon, LLC) granted him 76,500 Profit Interest Units. Dr. Heller was told by Defendant Kathuria and Defendant Ng that there had been an error in setting up the original equity awards granted under the Original Employment Agreement, which impacted all prior employee equity grants (except Defendant Kathuria's) and that the Company had to form a new entity in order to give employees the promised equity. Dr. Heller grew concerned, particularly because this change impacted the equity holdings of other employees, but not Defendant Kathuria's.

**ANSWER:**    The allegations contained in Paragraph 48 purport to characterize the contents of the Profit Interest Grant, to which Defendants respectfully refer the Court for a complete and accurate statement of its contents. Defendants deny the remaining allegations contained in Paragraph 48.

49.    The Profit Interest Grant made clear that 60% of the granted units would vest immediately upon the date of the grant, and the remaining 40% of the granted units would vest in equal quarterly installments following the effective date of the agreement (*i.e.*, February 22, 2021), until the 18-month anniversary of the effective date. Consistent with the Amended Employment

Agreement, the Profit Interest Grant stated that, in the event "Grantee resigns from Ocean Biomedical, Inc. for Good Reason, then any then-outstanding and unvested Granted Units shall immediately vest in full on the date of such termination."

**ANSWER:**    The allegations contained in Paragraph 49 purport to characterize the contents of the Profit Interest Grant, to which Defendants respectfully refer the Court for a complete and accurate statement of its contents.

50.    The Profit Interest Grant provides, in relevant part, the following definition of "Good Reason:"

> (d)    "Good Reason" shall mean ... (iii) the assignment to Grantee of any duties or responsibilities that results in the material diminution in the Grantee's responsibilities, authority and function as in effect immediately prior thereto, and which are inconsistent in a material and adverse respect with Grantee's position with [Ocean]; .... or (v) a material breach by [Ocean] of any material agreement between grantee and [Ocean], concerning the terms and conditions of Grantee's employment, Grantee's benefits or Grantee's compensation with [Ocean], so long as Grantee provides at least 90 days' notice to [Ocean] following the initial occurrence of any such event and [Ocean] fails to cure such event within 30 days thereafter.

**ANSWER:**    The allegations contained in Paragraph 50 purport to characterize the contents of the Profit Interest Grant, to which Defendants respectfully refer the Court for a complete and accurate statement of its contents.

51.    Contemporaneous with execution of the Amended Employment Agreement and Profits Interest Grant, Dr. Heller formally licensed to Ocean certain assets of a company he controlled (Teton Therapeutics), under the terms of the Amended and Restated Exclusive License Agreement, executed on February 25, 2021 ("License Agreement"). Ocean never compensated Dr. Heller in any manner pursuant to the License Agreement.

**ANSWER:**     Defendants admit the License Agreement between Ocean and Teton Therapeutics was executed on February 25, 2021. Defendants deny the remaining allegations contained in Paragraph 51 of the Complaint.

### Dr. Heller Resigns from Ocean for Good Reason and Remains Uncompensated for All Work Done Through Two and A Half Years of Employment

52.     Dr. Heller continued to work for Ocean without compensation, based on the assurances that he continued to receive from Defendants Ng and Kathuria that he would eventually be paid.

**ANSWER:**     Defendants deny the allegations contained in Paragraph 52 of the Complaint.

53.     In May 2021, led by Defendant Kathuria, Ocean began to exclude Dr. Heller from investor meetings. Despite his conversations with Defendant Ng, who agreed (and supposedly advocated) that having Dr. Heller present at investor pitches and meetings was not only part of his role, but essential to the pitch, on information and belief, Defendant Kathuria obstructed Dr. Heller's ability to perform this important function of his job and attract investments needed to fund his earned but unpaid salary and bonus.

**ANSWER:**     Defendants deny the allegations contained in Paragraph 53 of the Complaint.

54.     On or about May 11, 2021, Dr. Heller learned that he was to be excluded from an upcoming "road show" meetings with investors. As CSO and Head of R&D, Dr. Heller believed that it was part and parcel of his role to represent the science and development pipeline of the Company and that Ocean was stripping him of important duties of his job.

**ANSWER:**     Defendants deny that the Company was "stripping him of important duties of his job." Defendants admit Plaintiff did not participate in certain "road show" meetings. Defendants lack information or knowledge sufficient to form a belief as to the truth of the remaining allegations

contained in Paragraph 54 of the Complaint and therefore deny the remaining allegations in Paragraph 54 and put Plaintiff to his strictest proof thereon.

55.     Dr. Heller discussed his exclusion from these meetings with Defendant Ng and later documented his concerns in a written notification to both Defendants Kathuria and Ng regarding the Company's material diminution of his job responsibilities. In an email correspondence entitled "Confirmation that you are excluding me from upcoming 'road show' meetings." Dr. Heller noted: "It is the responsibility of the Chief Scientific Office and Head of R&D to represent the science and pipeline of a biotechnology company respectively, and my discussions with both of you in the past indicated your support me to do so. I am surprised and discouraged to hear that you are blocking my participation in these discussions as doing so appears to be against the best interest of the company." See Exhibit 5.

**ANSWER:**     Defendants admit Plaintiff sent an email to Defendant Ng and Defendant Kathuria. Defendants deny that there was any material diminution in Plaintiff's job responsibilities. The remaining allegations contained in Paragraph 55 purport to characterize the contents of the email, to which Defendants respectfully refer the Court for a complete and accurate statement of its contents.

56.     Defendant Ocean failed to cure the material diminution in Dr. Heller's job responsibilities. It did not allow him to participate in the "road show." Following the "road show" meetings, Dr. Heller again reached to Defendants Ng and Kathuria on June 9, 2021 to express his disappointment in their decision to continue to exclude him from crucial ongoing investor meetings. He maintained that participating in such meetings was an integral part of his job as CSO and Head of R&D, asking that they "let [him] do the job [he] was hired to do." Exhibit 6.

**ANSWER:**    Defendants deny that there was any material diminution in Plaintiff's job responsibilities and therefore no duty to "cure" any such diminution existed. Defendants deny that Ocean failed to "cure" any diminution in job responsibilities. Defendants admit that Plaintiff did not participate in all "road show" meetings. Defendants admit that Plaintiff sent Defendant Ng and Defendant Kathuria an email. The remaining allegations contained in Paragraph 56 purport to characterize the contents of the email, to which Defendants respectfully refer the Court for a complete and accurate statement of its contents.

57.    Nonetheless, Ocean failed to cure its material diminution of his job responsibilities and continued to exclude Dr. Heller from investor meetings.

**ANSWER:**    Defendants deny that there was any material diminution in Plaintiff's job responsibilities and therefore no duty to "cure" any such diminution existed. Defendants deny that Ocean failed to "cure" any diminution in job responsibilities. Defendants admit Plaintiff did not participate in all investor meetings. Defendants deny the remaining allegations of Paragraph 57 of the Complaint.

58.    On June 10, 2021, Defendant Ocean filed for a Registration Statement (Form S-1) with the Securities and Exchange Commission.

**ANSWER:**    Defendants admit the allegations contained in Paragraph 58 of the Complaint.

59.    On August 27, 2021, having heard no response from Defendants Kathuria or Ng in response to his repeated objections to Ocean's material diminution of his responsibilities, authority and functions at the Company and given Ocean's failure to cure, Dr. Heller resigned from Ocean for "Good Reason."

**ANSWER:**    Defendants admit that Plaintiff resigned on or about August 27, 2021. Defendants deny that Plaintiff resigned for "Good Reason." Defendants deny the remaining allegations contained in Paragraph 59.

60.    Dr. Heller received no response from Ocean. Ocean failed to respond to or cure the grounds for his resignation for Good Reason. Ocean failed to provide Dr. Heller with the severance benefits set forth in the Amended Employment Agreement.

**ANSWER:**    Defendants deny that there was any material diminution in Plaintiff's job responsibilities and therefore no duty to "cure" any such diminution existed. Defendants deny that Ocean failed to "cure" any diminution in job responsibilities. Defendants affirmatively state that Plaintiff did not resign for "Good Reason" and therefore is not entitled to severance benefits pursuant to the terms of the Amended Employment Agreement. Defendants affirmatively state that Plaintiff failed to execute and deliver an irrevocable release of claims in favor of the Company and its affiliates within sixty (60) days of his resignation and therefore is not entitled to any severance pursuant to the terms of the Amended Employment Agreement. Defendants deny the remaining allegations contained in Paragraph 60 of the Complaint.

61.    On information and belief, on February 15, 2023, Ocean Biomedical announced completion of its IPO. Dr. Heller learned of Ocean's IPO through public sources. He was not contacted by Ocean or Defendants Kathuria or Ng regarding the IPO announcement.

**ANSWER:**    Defendants deny that Ocean "announced completion of its IPO" on February 15, 2023. Defendants affirmatively state that Ocean announced the completion of its business combination with Aesther Healthcare Acquisition Corp., a publicly traded special purpose acquisition company, on February 15, 2023. Defendants deny the remaining allegations contained in Paragraph 61 of the Complaint.

62.     On March 20, 2023, Dr. Heller wrote to Defendants Ng and Kathuria regarding the IPO. In his communication he states that he "ask[s] you honor my employment contract. As I left Ocean Biomedical for cause, I am entitled to a portion of the IPO proceeds. This includes equity and accrued salary compensation among other benefits. I would like to know Ocean's plan for meeting[] its obligations." See Exhibit 7.

**ANSWER:**     Defendants deny that Ocean completed an IPO. Defendants admit that Plaintiff sent Defendant Ng and Defendant Kathuria an email. Defendants affirmatively state that Plaintiff did not contact any of the Defendants regarding his alleged entitlement to salary or severance following his resignation. Defendants affirmatively state that it was not until Ocean announced its successful combination with Aesther Healthcare a full 18 months after his resignation that Plaintiff reached out to Defendants and asserted his alleged entitlement to salary or severance. The remaining allegations contained in Paragraph 62 purport to characterize the contents of the email, to which Defendants respectfully refer the Court for a complete and accurate statement of its contents.

63.     Having received no response, Dr. Heller contacted Defendants Kathuria and Ng again on March 25, 2023, requesting a response. See id.

**ANSWER:**     Defendants admit that Plaintiff sent Defendant Ng and Defendant Kathuria an email. The remaining allegations contained in Paragraph 63 purport to characterize the contents of the email, to which Defendants respectfully refer the Court for a complete and accurate statement of its contents.

64.     Six days later, on March 31, 2023, Defendant Ng responded stating that: "We have received your message. The company is focused on several vital filings with the SEC, including

our annual audited financial statements. We will respond more fully late next week after those filings have been completed." See id.

**ANSWER:**    Defendants admit that Defendant Ng sent Plaintiff an email. The remaining allegations contained in Paragraph 64 purport to characterize the contents of the email, to which Defendants respectfully refer the Court for a complete and accurate statement of its contents.

65.    Having heard nothing further, Dr. Heller emailed Defendants Ng and Kathuria again on April 10, 2023, again requesting a response to his demand for monies owed to him. See Exhibit 7. Again, he received no response. As of the date of filing of this Complaint, Dr. Heller has not received any follow up correspondence as to Ocean's plans to honor its contractual obligations.

**ANSWER:**    Defendants admit that Plaintiff sent Defendant Ng and Defendant Kathuria an email. To the extent the allegations contained in Paragraph 65 purport to characterize the contents of the email, Defendants respectfully refer the Court to the email for a complete and accurate statement of its contents. Defendants affirmatively state that Plaintiff filed this Complaint within days of sending the email and without giving Defendants an opportunity to respond to the email. Defendants deny the remaining allegations contained in Paragraph 65 of the Complaint.

66.    As of the date of filing of this Complaint, Dr. Heller has not received payment from Ocean of his salary, the $30,000 sign-on bonus that he earned as of February 1, 2019, or his accrued 7.5 weeks of unused vacation time.

**ANSWER:**    Defendants affirmatively state that the conditions precedent under the Original Employment Agreement, the Amended Employment Agreement and/or the Profit Interest Grant have not been met and therefore no payment is owed to Plaintiff. Defendants deny the remaining allegations contained in Paragraph 66 of the Complaint.

67.     As of the date of filing of this Complaint, Dr. Heller has not received the severance benefits to which he is entitled based on his resignation for Good Reason, including twelve months of salary continuation, the First Capital Raise Bonus, and the IPO Bonus, or acknowledgement of his fully vested equity grants.

**ANSWER:**    Defendants deny the allegations contained in Paragraph 67 of the Complaint. Defendants affirmatively state that Plaintiff did not resign for "Good Reason" and therefore is not entitled to severance benefits pursuant to the terms of the Amended Employment Agreement. Defendants affirmatively state that Plaintiff failed to execute and deliver an irrevocable release of claims in favor of the Company and its affiliates within sixty (60) days of his resignation and therefore is not entitled to any severance pursuant to the terms of the Amended Employment Agreement. Defendants affirmatively state that the first capital raise has not been completed and therefore Plaintiff is not entitled to the First Capital Raise Bonus pursuant to the terms of the Amended Employment Agreement. Defendants affirmatively state that it did not complete an IPO and/or did not complete an IPO on or before August 31, 2021 and therefore Plaintiff is not entitled to the IPO Bonus pursuant to the terms of the Amended Employment Agreement.

68.     As of the filing of this Complaint, Dr. Heller has not been reimbursed for any of his out-of-pocket business expenses incurred in connection with his employment with Ocean.

**ANSWER:**    Defendants deny the allegations contained in Paragraph 68 of the Complaint.

69.     Pursuant to M.G.L. c. 149 § 150, Dr. Heller filed a wage claim with the Office of the Massachusetts Attorney General on May 5, 2023, and on May 8, 2023, received a letter granting him permission to file this action. See Exhibit 8.

**ANSWER:**    Defendants lack information or knowledge sufficient to form a belief as to the truth of the allegations contained in Paragraph 69 of the Complaint and therefore deny the allegations in Paragraph 69 and put Plaintiff to his strictest proof thereon.

## CLAIMS

### COUNT I – M.G.L. C. 149 § 149 – FAILURE TO PAY WAGES
#### (against Defendants Ocean, Kathuria and Ng)

70.    Dr. Heller realleges and incorporates by reference paragraphs 1 to 69 as though fully set forth herein.

**ANSWER:**    Defendants hereby incorporate by reference their responses to Paragraphs 1 through 69 of the Complaint, as if fully set forth herein.

71.    As set forth above, Defendants have failed to promptly and fully pay Dr. Heller his earned and owed wages, and similarly have failed to pay him for his accrued but unused vacation (totaling 7.5 weeks) at termination and his earned but unpaid sign-on bonus, in violation of M.G.L. c. 149 § 148.

**ANSWER:**    Defendants deny the allegations contained in Paragraph 71 of the Complaint.

72.    As set forth above, Defendants attempted to avoid their obligation to promptly to pay Dr. Heller's wages by entering into a special contract to defer wages, both in the Original Employment Agreement and Amended Employment Agreement, in direct violation of M.G.L. c. 149 § 148.

**ANSWER:**    Defendants deny the allegations contained in Paragraph 72 of the Complaint.

73.    During Dr. Heller's employment with Ocean, he earned over $875,000 in accrued salary, for which he was never paid.

**ANSWER:**    Defendants deny the allegations contained in Paragraph 72 of the Complaint.

74.     Ocean failed to pay Dr. Heller for his sign-on bonus of $30,000, which was earned as of his start date of February 1, 2019, upon termination of his employment in violation of M.G.L. c. 149 § 148.

**ANSWER:**     Defendants deny the allegations contained in Paragraph 74 of the Complaint.

75.     Dr. Heller was not paid for his accrued but unused vacation time (totaling 7.5 weeks) in violation of M.G.L. c. 149 § 148.

**ANSWER:**     Defendants deny the allegations contained in Paragraph 75 of the Complaint.

76.     As Founder and Executive Chairman of the Board of Ocean, and given his direct role in management of the company, including by executing the Original and Amended Employment Agreements with Dr. Heller, Defendant Kathuria is individually liable to Dr. Heller for violations of M.G.L. 149 § 148.

**ANSWER:**     Defendants deny the allegations contained in Paragraph 76 of the Complaint.

77.     Given her responsibilities for the management of the Company and payment of wages to its employees, as Chief Executive Officer of Ocean, Defendant Ng is individually liable to Dr. Heller for violations of M.G.L. 149 § 148.

**ANSWER:**     Defendants deny the allegations contained in Paragraph 77 of the Complaint.

78.     As a result of the harm suffered by Dr. Heller, defendants are liable for treble damages, and attorneys' fees and costs, under M.G.L. c. 149 § 150.

**ANSWER:**     Defendants deny the allegations contained in Paragraph 78 of the Complaint.

## COUNT II – M.G.L. C. 149 § 148A– RETALIATION
### (against Ocean)

79.     Dr. Heller realleges and incorporates by reference paragraphs 1 to 78 as though fully set forth herein.

**ANSWER:**    Defendants hereby incorporate by reference their responses to Paragraphs 1 through 78 of the Complaint, as if fully set forth herein.

80.    Dr. Heller repeatedly raised concerns regarding Defendant Ocean's non-payment of wages to the Company.

**ANSWER:**    Defendants deny the allegations contained in Paragraph 80 of the Complaint.

81.    As a result of Dr. Heller's protected activity, Defendant Ocean, through the actions of Defendant Kathuria, stripped Dr. Heller of important job duties as the Company's CSO and Head of R&D, including its decision to exclude Dr. Heller from investor presentations. His participation in investor meetings and presentations was integral to his role and in the best interest of the Company. Upon his voicing concerns as to the nonpayment of his salary, Defendant Ocean retaliated against him in violation of M.G.L. C. 149 § 148A.

**ANSWER:**    Defendants deny the allegations contained in Paragraph 81 of the Complaint.

82.    As a result of the harm suffered by Dr. Heller, defendants are liable for treble damages, attorneys' fees and costs, under M.G.L. c. 149 § 150.

**ANSWER:**    Defendants deny the allegations contained in Paragraph 82 of the Complaint.

## <u>COUNT III -- M.G.L. c. 151 § 1 -- FAILURE TO PAY MINIMUM WAGE</u>
(against Defendant Ocean, Ng, and Kathuria)

83.    Dr. Heller realleges and incorporates by reference paragraphs 1 to 82 as though fully set forth herein.

**ANSWER:**    Defendants hereby incorporate by reference their responses to Paragraphs 1 through 82 of the Complaint, as if fully set forth herein.

84.    Dr. Heller worked for Defendant Ocean for a period of two and a half years.

**ANSWER:**    Defendants deny the allegations contained in Paragraph 84 of the Complaint.

85.     Dr. Heller received no compensation from Defendant Ocean for the work he did throughout the two and a half years of his employment.

**ANSWER:**     Defendants deny the allegations contained in Paragraph 85 of the Complaint.

86.     Accordingly, Defendant Ocean failed to pay Dr. Heller the minimum wage in violation of M.G.L. c. 151 § 1.

**ANSWER:**     Defendants deny the allegations contained in Paragraph 86 of the Complaint.

87.     As a result, Defendant Ocean has caused harm for which it is liable for damages, attorneys' fees and costs under M.G.L. c. 151 § 20.

**ANSWER:**     Defendants deny the allegations contained in Paragraph 87 of the Complaint.

### COUNT IV -- 29 U.S.C. §§ 206, 215 -- VIOLATIONS UNDER THE FLSA
(against Defendants Ocean, Ng, and Kathuria)

88.     Dr. Heller realleges and incorporates by reference paragraphs 1 to 87 as though fully set forth herein.

**ANSWER:**     Defendants hereby incorporate by reference their responses to Paragraphs 1 through 87 of the Complaint, as if fully set forth herein.

89.     Dr. Heller worked for Defendants for a period of two and a half years.

**ANSWER:**     Defendants deny the allegations contained in Paragraph 89 of the Complaint.

90.     Dr. Heller received no compensation from Defendants for the work he did throughout two and a half years.

**ANSWER:**     Defendants deny the allegations contained in Paragraph 90 of the Complaint.

91.     Dr. Heller repeatedly raised concerns as to the nonpayment of wages throughout two and a half years. Upon his voicing concerns as to the nonpayment of his salary, Defendant Ocean retaliated against him in violation of 29 U.S.C. § 215.

**ANSWER:**     Defendants deny the allegations contained in Paragraph 91 of the Complaint.

92.     Defendants' actions were taken with willful disregard for the rights of Dr. Heller under the FLSA.

**ANSWER:**    Defendants deny the allegations contained in Paragraph 92 of the Complaint.

93.     As a result of Defendants' willful and unlawful conduct, Dr. Heller suffered a loss of wages.

**ANSWER:**    Defendants deny the allegations contained in Paragraph 93 of the Complaint.

94.     As a result of their FLSA violations, Defendants are liable to Dr. Heller for: (a) all unpaid wages for all hours worked; (b) an additional, equal amount as liquidated damages for their willful violations of the FLSA; and (c) reasonable attorneys' fees and costs, pursuant to 29 U.S.C. § 216.

**ANSWER:**    Defendants deny the allegations contained in Paragraph 94 of the Complaint.

### COUNT V – BREACH OF CONTRACT – Delaware Common Law
(against all Defendants Ocean and Poseidon)

95.     Dr. Heller realleges and incorporates by reference paragraphs 1 to 94 as though fully set forth herein.

**ANSWER:**    Defendants hereby incorporate by reference their responses to Paragraphs 1 through 94 of the Complaint, as if fully set forth herein.

96.     Defendants entered into a binding and valid agreement with Dr. Heller.

**ANSWER:**    Defendants deny the allegations contained in Paragraph 96 of the Complaint.

97.     Defendant Ocean breached its contractual obligations under the Amended Employment Agreement, whereby it failed to pay any of the agreed-upon severance benefits, including twelve months of salary continuation, the "First Capital Raise Bonus" and the "IPO bonus."

**ANSWER:**    Defendants deny the allegations contained in Paragraph 97 of the Complaint.

98.     Defendant Poseidon breached its contractual obligations under the Profits Interest Grant, by failing to accelerate his then-outstanding and unvested equity grants in full as of August 27, 2021, the date of his resignation for "Good Reason."

**ANSWER:**     Defendants deny the allegations contained in Paragraph 98 of the Complaint.

99.     As a result of these breaches of various contracts, Dr. Heller has been damaged and will continued to be damaged as a result of Defendants' breaches of the Amended Employment Agreement and the Grant of Profits Interest Under the Amended and Restated Operating Agreement.

**ANSWER:**     Defendants deny the allegations contained in Paragraph 99 of the Complaint.

### COUNT VI – BREACH OF IMPLIED COVENANT OF
### GOOD FAITH AND FAIR DEALING -- Delaware Common Law
(against all Defendant Ocean and Poseidon)

100.     Dr. Heller realleges and incorporates by reference paragraphs 1 to 99 as though fully set forth herein.

**ANSWER:**     Defendants hereby incorporate by reference their responses to Paragraphs 1 through 99 of the Complaint, as if fully set forth herein.

101.     Implied in every contract under Delaware law is a covenant of good faith and fair dealing.

**ANSWER:**     Defendants deny the allegations contained in Paragraph 101 of the Complaint.

102.     Defendants Ocean and Poseidon violated the covenant of good faith and fair dealing by, among other conduct, intentionally disregarding the contractually agreed-upon payments owed to Heller, with respect to services performed during his employment and severance benefits owed to him following his employment, and further when misrepresenting the likelihood of successful completion of the IPO, upon which Dr. Heller's salary and IPO bonus would have been due under the terms of the Amended Employment Agreement.

**ANSWER:**    Defendants deny the allegations contained in Paragraph 102 of the Complaint.

103.    As a result of these breaches of the covenant of good faith and fair dealing, Dr. Heller has suffered, and will continue to suffer, harm and other damages.

**ANSWER:**    Defendants deny the allegations contained in Paragraph 103 of the Complaint.

## COUNT VII –QUANTUM MERUIT – Delaware Common Law
### (Against Defendants Ocean and Poseidon)

104.    Dr. Heller realleges and incorporates by reference paragraphs 1 to 103 as though fully set forth herein.

**ANSWER:**    Defendants hereby incorporate by reference their responses to Paragraphs 1 through 104 of the Complaint, as if fully set forth herein.

105.    Defendants consistently represented to Dr. Heller that funding was near and a First Capital Raise and/or the IPO was imminent.

**ANSWER:**    Defendants deny the allegations contained in Paragraph 105 of the Complaint.

106.    Defendant Ocean excluded Dr. Heller from investor presentations and discussions, and as a result, was in a position where he had to rely on the Company's representations regarding the status of potential investments.

**ANSWER:**    Defendants deny the allegations contained in Paragraph 106 of the Complaint.

107.    Dr. Heller reasonably relied on Defendant Ocean's promises and devoted substantial time, energy, and effort to have Ocean achieve its operational objectives.

**ANSWER:**    Defendants deny the allegations contained in Paragraph 107 of the Complaint.

108.    Defendants failed and refused to honor its promises in refusing to pay benefits to which Dr. Heller is owed under the terms of the Amended Employment Agreement and the Profits Interest Grant, including but not limited to the severance benefits, the First Capital Raise Bonus the IPO Bonus and full acceleration of equity vesting.

**ANSWER:**    Defendants deny the allegations contained in Paragraph 108 of the Complaint.

## AFFIRMATIVE DEFENSES

1.    Plaintiff has failed to state a claim upon which relief can be granted.

2.    Plaintiff has failed to mitigate his alleged damages.

3.    Plaintiff's claims are barred by the failure to satisfy all conditions precedent to his alleged entitlement to performance by Defendants.

4.    Plaintiff's claims are barred by doctrines of waiver, estoppel, unclean hands, and laches.

5.    Plaintiff's claims are barred by doctrines of waiver, estoppel, unclean hands, and laches.

6.    Plaintiff's claims are barred in whole or in part because the parties' written contracts govern the rights and obligations of the parties and there is no basis for any non-contract claims under applicable law.

7.    Plaintiff's claims are barred in whole or in part because Plaintiff's damages, to the extent they are proven to exist, were caused by the actions or omissions of persons or entities other than Defendants.

8.    Some or all of the damages requested in Plaintiff's Complaint are limited or are not recoverable in this action.

9.    Plaintiff's claims are barred in whole or in part under the doctrines of set-off and/or recoupment.

10.    Plaintiff's claims are barred in whole or in part under the doctrine *in pari delicto*.

11.    Defendants reserve the right to amend and supplement their affirmative defenses.

WHEREFORE, Defendants respectfully request that the Court dismiss Plaintiff's Complaint with prejudice and enter judgment in their favor along with any other such relief the Court deems necessary and just.

Dated this 27th day of July, 2023      By:      /s/ *Brandon M. Darelius*
                                                  Brandon M. Darelius (#10414)
                                                  Scott M. Carroll (#7624)
                                                  Boyle Shaughnessy Law, PC
                                                  One Turks Head Pl.
                                                  Suite 1330
                                                  Providence, RI 02903
                                                  Telephone: (401) 270-7676
                                                  scarroll@boyleshaughnessy.com
                                                  bdarelius@boyleshaughnessy.com

                                                  Amy L. Vandamme (*pro hac vice forthcoming*)
                                                  Dykema Gossett PLLC
                                                  111 E. Kilbourn Avenue, Suite 1050
                                                  Milwaukee, WI 53202
                                                  Telephone: (414) 448-7345
                                                  avandamme@dykema.com

                                                  *Attorneys for Defendants Chirinjeev Kathuria, Elizabeth Ng, Ocean Biomedical, Inc. and Poseidon Bio, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on July 27, 203, I filed the foregoing document filed through the ECF system which will send notice electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

                                                  /s/ Brandon M. Darelius
                                                  Brandon M. Darelius, Esquire (#10414)